CHAMPION SPARK PLUG CO. *v.* SANDERS ET AL., DOING BUSINESS AS PERFECT RECONDITION SPARK PLUG CO.

No. 680.   Argued April 2, 3, 1947.—Decided April 28, 1947.

*Samuel E. Darby, Jr.* argued the cause for petitioner. With him on the brief were *Wilbur Owen* and *Carl F. Schaffer.*

*John Wilson Hood* argued the cause and filed a brief for respondents.

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE BLACK.

Petitioner is a manufacturer of spark plugs which it sells under the trade mark "Champion." Respondents collect the used plugs, repair and recondition them, and resell them. Respondents retain the word "Champion" on the repaired or reconditioned plugs. The outside box or carton in which the plugs are packed has stamped on it the word "Champion," together with the letter and figure denoting the particular style or type. They also have printed on them "Perfect Process Spark Plugs Guaranteed Dependable" and "Perfect Process Renewed Spark Plugs." Each carton contains smaller boxes in which the plugs are individually packed. These inside boxes also carry legends indicating that the plug has been renewed.[1] But respondent company's business name or address is not printed on the cartons. It supplies customers with petitioner's charts containing recommendations for the use of Champion plugs. On each individual plug is stamped in small letters, blue on black, the word "Renewed," which at times is almost illegible.

Petitioner brought this suit in the District Court, charging infringement of its trade mark and unfair competition. See Judicial Code § 24 (1), (7), 28 U. S. C. § 41 (1), (7). The District Court found that respondents had infringed the trade mark. It enjoined them from offering or selling

---

[1] "The process used in renewing this plug has been developed through 10 years continuous experience. This Spark Plug has been tested for firing under compression before packing."

"This Spark Plug is guaranteed to be a selected used Spark Plug, thoroughly renewed and in perfect mechanical condition and is guaranteed to give satisfactory service for 10,000 miles."

any of petitioner's plugs which had been repaired or reconditioned unless (a) the trade mark and type and style marks were removed, (b) the plugs were repainted with a durable grey, brown, orange, or green paint, (c) the word "REPAIRED" was stamped into the plug in letters of such size and depth as to retain enough white paint to display distinctly each letter of the word, (d) the cartons in which the plugs were packed carried a legend indicating that they contained used spark plugs originally made by petitioner and repaired and made fit for use up to 10,000 miles by respondent company.[2] The District Court denied an accounting. See 56 F. Supp. 782, 61 F. Supp. 247.

The Circuit Court of Appeals held that respondents not only had infringed petitioner's trade mark but also were guilty of unfair competition. It likewise denied an accounting but modified the decree in the following respects: (a) it eliminated the provision requiring the trade mark and type and style marks to be removed from the repaired or reconditioned plugs; (b) it substituted for the requirement that the word "REPAIRED" be stamped into the plug, etc., a provision that the word "REPAIRED" or "USED" be stamped and baked on the plug by an electrical hot press in a contrasting color so as to be clearly and distinctly visible, the plug having been completely covered by permanent aluminum paint or other paint or lacquer; and (c) it eliminated the provision specifying the precise legend to be printed on the cartons and substituted there-

---

[2] The prescribed legend read:

"Used spark plug(s) originally made by Champion Spark Plug Company repaired and made fit for use up to 10,000 miles by Perfect Recondition Spark Plug Co., 1133 Bedford Avenue, Brooklyn, N. Y."

The decree also provided:

"the name and address of the defendants to be larger and more prominent than the legend itself, and the name of plaintiff may be in slightly larger type than the rest of the body of the legend."

for a more general one.[3]  156 F. 2d 488.  The case is here on a petition for certiorari which we granted because of the apparent conflict between the decision below and *Champion Spark Plug Co.* v. *Reich,* 121 F. 2d 769, decided by the Circuit Court of Appeals for the Eighth Circuit.

There is no challenge here to the findings as to the misleading character of the merchandising methods employed by respondents, nor to the conclusion that they have not only infringed petitioner's trade mark but have also engaged in unfair competition.[4]  The controversy here relates to the adequacy of the relief granted, particularly the refusal of the Circuit Court of Appeals to require respondents to remove the word "Champion" from the repaired or reconditioned plugs which they resell.

We put to one side the case of a manufacturer or distributor who markets new or used spark plugs of one make under the trade mark of another.  See *Bourjois & Co.* v. *Katzel,* 260 U. S. 689; *Old Dearborn Co.* v. *Seagram Corp.,* 299 U. S. 183, 194.  Equity then steps in to prohibit defendant's use of the mark which symbolizes plaintiff's good will and "stakes the reputation of the plaintiff upon the character of the goods." *Bourjois & Co.* v. *Katzel, supra,* p. 692.

We are dealing here with second-hand goods.  The spark plugs, though used, are nevertheless Champion plugs and not those of another make.[5]  There is evidence

---

[3] "The decree shall permit the defendants to state on cartons and containers, selling and advertising material, business records, correspondence and other papers, when published, the original make and type numbers provided it is made clear that any plug referred to therein is used and reconditioned by the defendants, and that such material contains the name and address of defendants."

[4] See *Federal Trade Commission* v. *Winsted Hosiery Co.,* 258 U. S. 483, 493–494; *Warner & Co.* v. *Lilly & Co.,* 265 U. S. 526, 530.

[5] Cf. *Federal Trade Commission* v. *Klein,* 5 F. T. C. 327.

to support what one would suspect, that a used spark plug which has been repaired or reconditioned does not measure up to the specifications of a new one.   But the same would be true of a second-hand Ford or Chevrolet car.   And we would not suppose that one could be enjoined from selling a car whose valves had been reground and whose piston rings had been replaced unless he removed the name Ford or Chevrolet.   *Prestonettes, Inc.* v. *Coty,* 264 U. S. 359, was a case where toilet powders had as one of their ingredients a powder covered by a trade mark and where perfumes which were trade marked were rebottled and sold in smaller bottles.   The Court sustained a decree denying an injunction where the prescribed labels told the truth.   Mr. Justice Holmes stated, "A trade mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. . . .   When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth.   It is not taboo."   P. 368.

Cases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words "used" or "repaired" were added.   Cf. *Ingersoll* v. *Doyle,* 247 F. 620.   But no such practice is involved here.   The repair or reconditioning of the plugs does not give them a new design.   It is no more than a restoration, so far as possible, of their original condition. The type marks attached by the manufacturer are determined by the use to which the plug is to be put.   But the thread size and size of the cylinder hole into which the plug is fitted are not affected by the reconditioning.   The heat range also has relevance to the type marks.   And there is evidence that the reconditioned plugs are inferior so far as heat range and other qualities are concerned.   But inferiority is expected in most second-hand articles.   Indeed,

they generally cost the customer less. That is the case here. Inferiority is immaterial so long as the article is clearly and distinctly sold as repaired or reconditioned rather than as new.[6] The result is, of course, that the second-hand dealer gets some advantage from the trade mark. But under the rule of *Prestonettes, Inc.* v. *Coty, supra,* that is wholly permissible so long as the manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer. Full disclosure gives the manufacturer all the protection to which he is entitled.

The decree as shaped by the Circuit Court of Appeals is fashioned to serve the requirements of full disclosure. We cannot say that of the alternatives available the ones it chose are inadequate for that purpose. We are mindful of the fact that this case, unlike *Prestonettes, Inc.* v. *Coty, supra,* involves unfair competition as well as trade mark infringement; and that where unfair competition is established, any doubts as to the adequacy of the relief are generally resolved against the transgressor. *Warner & Co.* v. *Lilly & Co.,* 265 U. S. 526, 532. But there was here no showing of fraud or palming off. Their absence, of course, does not undermine the finding of unfair competition. *Federal Trade Commission* v. *Winsted Hosiery Co.,* 258 U. S. 483, 493–494; *G. H. Mumm Champagne* v. *Eastern Wine Corp.,* 142 F. 2d 499, 501. But the character of the conduct giving rise to the unfair competition is relevant to the remedy which should be afforded. See *Siegel Co.* v. *Federal Trade Commission,* 327 U. S. 608. We cannot say that the conduct of respondents in this case, or the nature

---

[6] See *Federal Trade Commission* v. *Typewriter Emporium,* 1 F. T. C. 105; *Federal Trade Commission* v. *Check Writer Manufacturers,* 4 F. T. C. 87; *In the Matter of Federal Auto Products Co.,* 20 F. T. C. 334.

of the article involved and the characteristics of the merchandising methods used to sell it, called for more stringent controls than the Circuit Court of Appeals provided.

*Mishawaka Mfg. Co.* v. *Kresge Co.,* 316 U. S. 203, states the rule governing an accounting of profits where a trade mark has been infringed and where there is a basis for finding damage to the plaintiff and profit to the infringer. But it does not stand for the proposition that an accounting will be ordered merely because there has been an infringement.    Under the Trade Mark Act of 1905,[7] as under its predecessors, an accounting has been denied where an injunction will satisfy the equities of the case.    *Saxlehner* v. *Siegel-Cooper Co.,* 179 U. S. 42; *Rowley Co.* v. *Rowley,* 193 F. 390, 393; *Middleby-Marshall Oven Co.* v. *Williams Oven Mfg. Co.,* 12 F. 2d 919, 921; *Golden West Brewing Co.* v. *Milonas & Sons,* 104 F. 2d 880, 882; *Hemmeter Cigar Co.* v. *Congress Cigar Co.,* 118 F. 2d 64, 71–72; *Durable Toy & Novelty Corp.* v. *J. Chein & Co.,* 133 F. 2d 853, 854– 855.    The same is true in case of unfair competition. *Straus* v. *Notaseme Co.,* 240 U. S. 179, 181–183.    Here, as we have noted, there has been no showing of fraud or palming off.    For several years respondents apparently endeavored to comply with a cease and desist order of the Federal Trade Commission requiring them to place on the plugs and on the cartons a label revealing that the plugs were used or second-hand.    Moreover, as stated by the Circuit Court of Appeals, the likelihood of damage to petitioner or profit to respondents due to any misrepre-

---

[7] Section 19 of that Act, 33 Stat. 724, 729, 15 U. S. C. § 99, provides in part, ". . . upon a decree being rendered in any such case for wrongful use of a trade-mark the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction."

sentation seems slight. In view of these various circumstances it seems to us that the injunction will satisfy the equities of the case.

*Affirmed.*