SINGER MFG. CO. et al. v. AMERICAN
APPLIANCE CO. et al.

Civ. A. No. 25371.

United States District Court
N. D. Ohio, E. D.

Sept. 20, 1949.

Oberlin & Limbach, Cleveland, Ohio, Edward S. Rogers, New York City, Newton A. Burgess, New York City, John F. Ryan, New York City, for plaintiffs.

James A. Rees, Cleveland, Ohio, Keith Lawrence, Cleveland, Ohio, James Bravo, Cleveland, Ohio, M. A. McCormack, Cleveland, Ohio, A. C. Carlin, Cleveland, Ohio, for defendants.

FREED, District Judge.

The plaintiffs seek injunctive relief and an accounting for trade mark infringement and unfair competition. Decrees have been entered by consent against American Appliance Co., Jeavons Japanning Co., and Alex Larsen and Marie Pancoast d. b. a. Modern Japanning Co. The remaining defendants, George F. Unbehaun, James R. Dickson, American Sewing Machine Co. and Acme Sewing Machine Co., Inc., contest the issue.

There is little dispute as to the salient facts. The plaintiffs for a period of over seventy-five years have manufactured and sold sewing machines, parts, and other appliances. Plaintiffs' sewing machines are distinctively identified by the name "Singer" and through the years the trade mark "Singer" has been widely advertised. The name and trade mark are identified in the mind of the public with the product of plaintiffs.

The individual defendants, operating at first as a partnership and later through wholly owned family corporations, rebuilt or had rebuilt and sold sewing machines, and sold sewing machine parts. They purchased old Singer treadle sewing machines regardless of their condition or age. Some of these machines were less than twenty-five years old, but many were older. Some of the machines were as much as fifty years old. After the machines had been purchased at exceedingly low prices they were renovated.

The mechanical parts were removed from the "head", the casing which contained the principal sewing mechanism. Where necessary, badly worn or broken parts were replaced with parts which with rare exception were not manufactured by Singer. The old finish, with the ornate and rococo scroll work characteristic of the period in which the machine was originally manufactured, was removed; and the "head" was rejapanned, usually with a modern black "crinkle" finish. The name "Singer" was replaced on the horizontal arm of the machine. The lettering was of a modern block type, closely resembling the present day Singer mark rather than the lettering which had been removed. On occasions a metal plate bearing the name "Singer" was used.

The machines were modernized in other respects as well. In most cases the "head" was electrified by the addition of a motor and a controller which were not of plaintiffs' manufacture. The old spoked flywheel was removed and replaced by a more modern disc wheel, without affecting the functional efficiency of the machine. In frequent instances, a reverse stitch mechanism replaced the original stitch adjustment knob; a tension device with a numbered knob; a tension device with a numbered dial was substituted for the former old-fashioned device which had no dial; a hinged presser foot took the place of the fixed presser foot; and a modern bobbin winder supplanted the old one. On occasions a device, which had never been used on plaintiffs' machines, was added to enable the operator to release the pressure from the presser foot and to move the goods freely in any direction underneath the presser foot.

Thus, old treadle sewing machines were transformed into electrified sewing machines of a modern appearance bearing such a close resemblance to machines of more recent vintage made by the plaintiffs that a careful examination was required in order to distinguish them.

For some time after the defendants began business there was pasted on the machine a small sticker bearing the legend "Rebuilt by American Sewing Machine Company, Cleveland, Ohio". These stickers did not adhere to the machine too well and sometimes had fallen off before the

sale of the machine. Later a decalcomania, of slightly larger size, bearing the same legend with the additional phrase "with American parts", was used.

These machines were ordinarily sold through retail outlets owned by the defendants or through leased departments in various stores. Defendants advertised fairly extensively, describing the machines as "Rebuilt Singer Electric Portable" or "Singer machines * * * new motor, new control, new cabinet" with "Rebuilt mechanism" appearing in smaller type.

The wrong of which the plaintiffs principally complain is the rebuilding and/or sale and misleading advertising of these machines.

The principal decision in this field is Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386. Both sides seek comfort there. The defendants in that case collected used Champion spark plugs and reconditioned them by restoring the electrodes. They were resold with the trade mark "Champion" still on them, but the plug and its container were stamped—sometimes illegibly—"Renewed". The District Court found that this practice constituted trade mark infringement. It denied an accounting, but enjoined further use of the trade mark on the plug. The Court of Appeals for the Second Circuit* found that the practice constituted unfair competition as well as trade mark infringement, but it modified the decree to permit use of the trade mark provided the plugs were clearly identified as "Repaired" or "Used". The Supreme Court affirmed, stating:

"Inferiority is immaterial so long as the article is clearly and distinctively sold as repaired or reconditioned rather than as new. * * * that is wholly permissible so long as the [original] manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer."

The defendants contend that the public is clearly informed that the machines are Singers rebuilt by the American Sewing Machine Co. with American parts, and that, therefore, the Champion holding is directly in point and controlling.

But the Court also said:

"Cases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added."

The plaintiffs contend that the imagined case is now at bar. This Court does not agree. While the changes made by the defendants are substantial, they are not "extensive or basic" but are merely incidental to the function of the machine. The sewing mechanism remains unchanged.

But because this is true, it does not follow that the defendants' practices are within the protection of the Champion holding. The facts here lie midway between that holding and the dictum on which the plaintiffs rely. The wrong here is palming off as a modern, up-to-date Singer machine that which is not.

The "modernizing" touches of the defendants—particularly the rejapanning, the electrification, the substitution of the more modern disc wheel—and the advertising techniques would inevitably lead the ordinary purchaser to believe the machines were reconditioned machines of a later model than they in fact were. The age of the machine was so ably concealed that the use of the name "Singer" in the manner practiced by the defendants misrepresented the machines sold.

The harm to the public of such deception is obvious. The harm to the plaintiffs, though remote, is equally insidious. The purchaser of a used Singer may well know that its performance will be inferior to that of a new Singer, but if he believes his Singer is only 10 years old when it is in fact 30 years old, will he not lay a portion of the blame for the unexpectedly unsatisfactory performance to the original builder? Further, would the purchaser who chooses the used machine do so if he were aware that his choice was between a new Singer and a 30 year old rebuilt Singer?

* 156 F.2d 488.

While the defendants under the law have the right to repair, renew, renovate or rebuild sewing machines, the machines sold by them must be so marked and labeled as to correctly and truthfully convey to the buying public the true character of the product. The present practice constitutes both trade mark infringement and unfair competition and will be enjoined.

In order to prevent future violations of plaintiffs' rights and to protect the purchasing public, the decree will be so shaped as to require that it be made clear, first, that the plaintiffs had no part in the rebuilding of the machines, and, second, that the machines are old rather than fairly new machines.

To this end, the renovated machines when sold should carry their complete history. Once the name "Singer" has been removed, the defendants should not restore it on the horizontal arm, but should instead use a non-infringing name of their own selection. If they so desire the defendants may use a medallion or decalcomania reading "A Singer head, repainted, electrified, and rebuilt by the American Sewing Machine Co. with American parts." The name "Singer" should not appear in larger letters than the balance of the legend. If the legend is used there should also be attached to the machine, and none should be sold without it, a card reading:

"This machine is a ——year old sewing machine originally manufactured by The Singer Manufacturing Co. It has been repainted, electrified, and reconditioned with modification of the original design by the American Sewing Machine Co. The parts used in rebuilding are not made by the original manufacturer."

Advertising copy should be within the spirit of these prohibitions.

The evidence also discloses that in at least one instance a machine was, after renovation, marked and sold as a "Singer" although it was not originally manufactured by the plaintiffs. This obviously infringes plaintiffs' rights and should be enjoined. The evidence also supports plaintiffs' claim that the defendants in responding to orders which requested sewing machine parts under plaintiffs' name supplied similar parts manufactured by another without making it clear to the purchaser that there had been a substitution. This too should be enjoined. See Singer Manufacturing Co. et al. v. Golden et al., 7 Cir., 171 F.2d 266, 268; 1 Nims, Unfair Competition and Trade-Marks 386.

An injunction satisfies the equities of the case and an accounting is therefore denied.

A form of decree including the provisions recited will be submitted by the plaintiffs.