## EXCALIBUR AUTOMOBILE CORPORATION, Plaintiff,

v.

## ELITE AUTOWORKS, INC., James Witkowski, and Jeff Braun, Defendants.

### No. 90–C–40.

United States District Court, E.D. Wisconsin.

March 19, 1990.

Michael, Best & Friedrich by Fred Wiviott and Dyann L. Bumpke, Milwaukee, Wis., for plaintiff.

Niebler & Muren by Joseph C. Niebler, Brookfield, Wis., for defendants.

### DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

In this action alleging trademark infringement, trade dress infringement and false designation of origin, the plaintiff seeks a preliminary injunction restraining the defendants from using the plaintiff's marks in connection with the advertising and sale of stretch limousines. The plaintiff manufactures and sells a brand of luxury cars known as Excalibur. The defendant is in the business of providing a customization service to owners of Excaliburs who wish to have their cars "stretched" into limousines. The motion for a preliminary injunction will be denied because the plaintiffs have failed to demonstrate a reasonable likelihood of success on the merits.

The plaintiff and its predecessors have manufactured and sold luxury automobiles for the last 20 years under the registered trademark "Excalibur." The various models include two door roadsters, four door sedans, and four door luxury limousines. The defendants have described the Excalibur automobile as a recreation of the neoclassical style of the 1920 to 1940 period. The plaintiff sells its cars directly to the public and also through a network of authorized dealers and distributors.

Elite Autoworks, Inc. was founded in April 1989 by James Witkowski upon the termination of his employment with the plaintiff. The business specializes in the conversion of existing Excalibur sedans into "stretch" limousines. The process of stretching a car involves separating the front end from the rear end and inserting structural elements and additional body panels in order to increase the length of the car. When the defendants stretch an Excalibur sedan, the finished product retains all its original Excalibur ornamentation.

The plaintiff argues that potential buyers of stretch limousines produced by the defendants will be mistaken, confused and deceived into thinking that the limousines

are produced by the plaintiff. The defendants argue that there is no danger of confusion because Elite does not buy or sell automobiles, but rather performs customization services for the owners of such cars.

The district court's exercise of discretion in the issuance of a preliminary injunction is traditionally guided by four factors: 1) whether the movant has an adequate remedy at law such that it will suffer irreparable harm if the preliminary injunction is denied; 2) whether the harm to the movant outweighs the harm to the opposing party if the injunction issues; 3) whether the movant has a reasonable likelihood of success on the merits; and 4) whether the granting of a preliminary injunction will disserve the public interest. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1181 (7th Cir.1989); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986). The application of these four factors has been described as a judicial effort to avoid two potential, but alternative, errors:

> ... the error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is more costly in the circumstances.

*Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 388 (7th Cir.1984); *see also American Hospital Supply v. Hospital Products, Ltd.*, 780 F.2d 589, 593 (7th Cir.1986) (stating proposition in mathematical terms).

The "likelihood of success on the merits" factor is generally considered a "threshold requirement." *Adams v. Attorney Registration and Disciplinary Commission*, 801 F.2d 968, 971 (7th Cir.1986).

In *Champion Spark Plug v. Sanders*, 331 U.S. 125, 129, 67 S.Ct. 1136, 1138, 91 L.Ed. 1386 (1947), the defendant resold rebuilt Champion sparkplugs. The Supreme Court found no trademark infringement provided that the defendant plainly labeled the reconditioned plugs as rebuilt. The Court quoted Justice Holmes:

> ... 'A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his... When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.'

*Id.* (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924)).

The defendants' advertising is clear and is not misleading. The advertising leaflet is prominently captioned in large dark type by the words "Elite Autoworks Inc." Under the caption, in smaller letters, appear the words "Excalibur Specialists—Stretch Conversions—20 Yrs Service Experience." The leaflet then states: "Announcing the 'Perfect Alternative' to the Limousine market 'The Excalibur Stretch Conversion'."

The plaintiff has failed to show that the defendants use its trademarks and "trade dress" in a way that deceives the public. The Elite Autoworks does not sell Excalibur automobiles; rather, it offers a service to owners of Excalibur automobiles who wish to stretch their sedans into limousines. This is not a case in which Elite Autoworks directly competes with Excalibur, rather, it provides a stretching service. Elite does not purport to deceive the public into thinking that the stretched product is manufactured by Excalibur. *See Ferrari S.p.A. v. McBurnie Coachcraft*, 10 U.S.P.Q.2d 1278 (S.D.Cal.1988). I doubt that Excalibur has a reasonable likelihood of success on the merits.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction pursuant to Rule 65, Federal Rules of Civil Procedure, be and hereby is denied.